**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OXFORD INVESTMENTS, L.P.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 09-3396** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

<u>**MEMORANDUM OPINION**</u>

Tucker, C. J.                                                                          May 14, 2014

Currently pending before the Court is Oxford Investments, L.P.'s Motion for Summary

Judgment (Doc. 71), the City of Philadelphia and the Philadelphia Zoning Board of Adjustment's

Motion for Summary Judgment (Doc. 70), and all responses thereto. For the reasons more fully

set forth below, the Court will deny Oxford's motion in its entirety, grant Defendants' motion in

its entirety, and dismiss all of Oxford's claims.


I.    **FACTUAL HISTORY**[1]

This is an action filed by Oxford Investments, L.P ("Oxford")[2] against the City of

Philadelphia and The Philadelphia Zoning Board of Adjustment ("ZBA") (collectively

---

[1]   Because the Court writes primarily for the parties, the Court discusses only those facts necessary to its decision.

[2]   Oxford was originally joined in this lawsuit by co-plaintiff Minsec Companies, Inc. ("Minsec") (Doc. 1). On
January 21, 2014, Minsec reached a settlement with Defendants and voluntarily dismissed their claims against
Defendants (Doc. 66). The Court granted the voluntary dismissal, and Minsec no longer is a party to this
lawsuit (Doc. 67).

"Defendants")[3] alleging discrimination against individuals with disabilities, and violations of the Federal Fair Housing Act ("FHA") and its Amendments, 42 U.S.C. §3604(f)(1)(b) and Section 3603(f)(3)(b), *inter alia.*[4]  Oxford's claims arise from the Defendants' refusal to permit Oxford to increase the number of residents housed at its facility located at 1917-23 West Oxford Street, Philadelphia, PA ("the Property"), from 44 residents to 88 residents.  (Stmt. Stip. Facts at ¶ 1.) Defendants' refusal to allow Oxford to house these additional residents, and Defendants' alleged discriminatory reasons behind its refusal, form the core of this case.

Oxford and its tenant, Minsec, were the operators of the Property in 2007.  (Oxford Mot. Summ. J. at 5.)  On July 26, 2007 Oxford applied to L&I for a Zoning/Use Registration Permit to allow Oxford to increase the number of residents housed at the Property from 44 residents to 88 residents.  (Stmt. Stip. Facts at ¶ 1.)  Oxford asserted that the additional residents it sought to house included persons referred to it through the courts.  (Id.)  On August 7, 2007, L&I refused to grant Oxford's requested permit because it determined that, if granted, the Property would be used as a private penal and correctional facility, a use not permitted at the Property as it was currently zoned.  (Stmt. Stip. Facts at ¶ 3.)  On August 9, 2007, Minsec submitted a request for a reasonable accommodation under the FHA with L&I to permit Oxford to increase the residents housed at the property from 44 residents to 88 residents because, "the individuals who reside in the facility suffer from drug and/or alcohol addiction, and some are mentally ill."  (Stmt. Stip. Facts at ¶ ¶5-6.)  The request stated that Oxford was the applicant.  (Stmt. Stip. Facts at ¶ 6.) L&I denied Oxford's FHA request.  (Stmt. Stip. Facts at ¶ 7.)

---

[3]  Oxford and Minsec also sued Philadelphia Department of Licenses and Inspections ("L&I") (Doc. 1).  On March 18, 2010, the Court dismissed all claims against L&I on the basis that it did not have a separate legal existence from the City (Doc. 11).

[4]  The Fair Housing Act was amended by the Fair Housing Amendments Act of 1988.  To be consistent with the briefings in this matter, the Court will refer to the legislation as the Fair Housing Act ("FHA").

After receiving the FHA denial from L & I, Oxford appealed to the ZBA.  (Stmt. Stip. Facts at ¶ 8.)  Oxford's petition for appeal filed with the ZBA noted four reasons for its appeal, including, "(1) the denial of the FHA Request was discriminatory and violated the FHA; (2) the Zoning Code violates the FHA by discriminating against individuals with disabilities; (3) the zoning refusal is erroneous, and Oxford should have received a permit as a matter of right; and (4) the granting of an FHA accommodation is appropriate and not an undue burden."  (Stmt. Stip. Facts at ¶ 8.)  The ZBA held a hearing on Oxford's appeal on February 24, 2009.  (Oxford's Mot. Summ. J. at Ex. H.)  At the hearing, Oxford presented several witnesses.  (Id.)  Also present at the meeting were several community organizers who were opposed to Oxford's request.  (Id.)  After the close of the meeting, the ZBA prepared findings of fact and conclusions of law with regard to Oxford's request.  (Oxford's Mot. Summ. J. at Ex. I.)  The ZBA denied Oxford's appeal on May 5, 2009.  (Stmt. Stip. Facts at ¶ 10.)

Following the ZBA's denial, on May 14, 2009, Oxford filed a statutory appeal to the First Judicial District of Pennsylvania, Court of Common Pleas.  (Stmt. Stip. Facts at ¶ 11.)  Oxford also filed the instant suit on July 28, 2009.  (Stmt. Stip. Facts at ¶ 13.)  During the pendency of the Federal Court action, Oxford's claims were dismissed by the Common Pleas Court on February 28, 2011.  Oxford Investments, L.P. v. Philadelphia Zoning Board of Adjustment, 2011 Phila. Ct. Com. Pl. LEXIS 58 (Pa. C.P. 2011).  Oxford filed an appeal of this decision to the Commonwealth Court of Pennsylvania.  (Stmt. Stip. Facts at ¶ 15.)  The Commonwealth Court granted Oxford a stay of this appeal on March 23, 2011.  (Stmt. Stip. Facts at ¶ 16.)

## II.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party is entitled to judgment as a matter of law where, upon making the appropriate motion under Fed. R. Civ. P. 56(a), the movant shows that there is "no genuine dispute as to any material fact".  Fed. R. Civ. P. 56(c).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir.1996).  The burden of proof rests originally with the movant to show the lack of dispute as to a material fact, and must do so by citing to specific portions of the record which demonstrate the movant's entitlement to judgment under Fed. R. Civ. P. 56.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To determine whether a movant has demonstrated that there are no genuine issues of material fact, a court must first consider the evidence presented by the moving party and draw all reasonable inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

For claims or defenses where the movant bears the burden of proof at trial, a movant "must show that it has produced enough evidence to support the findings of fact necessary to win." El v. Se. Pennsylvania Transp. Auth. (SEPTA), 479 F.3d 232, 237 (3d Cir. 2007).  For claims or defenses that the non-movant bears the burden of proof at trial, a movant can simply point out "that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  Once the movant has met its burden of proof under summary judgment, the opposing party "must point to actual evidence in the record on which a jury could decide an issue of fact its way." El, 479 F.3d at 238.

In order to survive summary judgment, the party opposing summary judgment must raise, "more than a mere scintilla of evidence in its favor." Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.1989). The party opposing summary judgment must cite specific evidence in the record and may not, "rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (describing this phase of summary judgment as "put up or shut up time for the non-moving party"). Reliance upon "conclusory, self-serving affidavits [is] insufficient to withstand a motion for summary judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir.2009). Both movant and the party opposing summary judgment must cite to evidence in the record that would be admissible at the time of trial. Reiff v. Marks, 2011 WL 666139 at *4 (E.D. Pa. 2011) (Rufe, J.). In deciding a motion for summary judgment, the court is limited to determining if there is a genuine issue as to a material fact requiring resolution by the finder of fact at trial. See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir.2007). The court does not weigh evidence or determine the truth in deciding if summary judgment is warranted. Id.

## III.   DISCUSSION

### A.   The Legal Effect of the Previous Litigation

Before addressing the merits of Oxford's claims, the Court must address the arguments regarding the preclusive effect of previous litigation between the parties. Under the operation of the Constitution's Full Faith and Credit Clause, state courts are required to give preclusive effect to judgments rendered by the courts of other States. U.S. CONST., ART. IV, § 1. Though not bound by the Full Faith and Credit Clause, 28 U.S.C. § 1738 requires Federal Courts to give

5

preclusive effect to state court judgments using "the same preclusion rules as would the courts of that state." Gage v. Warren Twp. Comm. & Planning Bd. Members, 463 F. App'x 68, 71 (3d Cir. 2012) (quoting Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir.1993)). In this case, the Court applies Pennsylvania preclusion law to determine if Oxford is precluded from presenting any claims or issues raised in previous litigation with the Defendants. Sheddy Family Trust ex rel. Sheddy v. Piatt Twp., 404 F. App'x 629, 631 (3d Cir. 2010).

Prior to filing the instant case, on May 14, 2009 Oxford filed a statutory appeal in the First Judicial District of Pennsylvania, Court of Common Pleas appealing the decision of the ZBA. (Stmt. Stip. Facts at ¶ 11.) On February 28, 2011 the Honorable Paul P. Panepinto issued a memorandum opinion affirming the decision of the ZBA, and dismissing Oxford's appeal. Oxford Investments, L.P. v. Philadelphia Zoning Board of Adjustment, 2011 Phila Ct. Com. Pl. LEXIS 58 (Pa. C.P. 2011). Judge Panepinto's Opinion fully detailed the court's reasoning and holdings, and made specific findings of fact and conclusions of law given the record as produced at the ZBA hearing.

### 1. Res Judicata

*Res judicata* stands for the somewhat simplistic conclusion that, "where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded." J.S. v. Bethlehem Area School District, 794 A.2d 936, 939 (Pa. Cmmw. 2002). Pennsylvania courts generally apply *res judicata* narrowly in zoning matters. Callowhill Ctr. Associates, LLC v. Zoning Bd. of Adjustment, 2 A.3d 802, 809 (Pa. Commw. Ct. 2010) (noting "the need for flexibility outweighs the risk of repetitive litigation," in zoning cases.). Nevertheless, *res judicata* bars any two claims that share: (1) Identity in the thing sued upon; (2) Identity in the cause of action; (3) Identity of the parties to the action; and (4) Identity of the capacity of the parties to be sued. Id.; see also

Gatling v. Eaton Corp., 807 A.2d 283, 287 (Pa. Super. 2002). *Res judicata* functions to bar issues that were actually raised in the previous litigation as well as "those which could or should have been raised but were not." Glynn v. Glynn, 789, A.2d 242, 250 (Pa. Super. 2001); see also Kelly v. Kelly, 887 A.2d 788, 792 (Pa. Super. Ct. 2005) (holding that a party cannot escape preclusion under the principle of *res judicata* "by varying the form of action or adopting a different method of presenting his case..."). Most importantly, "*res judicata* will 'not be defeated by minor differences of form, parties or allegations' where the 'controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'" Regscan, Inc. v. Brewer, CIV.A.04-6043, 2006 WL 401852, at *5 (E.D. Pa. Feb. 17, 2006) aff'd, 289 F. App'x 488 (3d Cir. 2008) (citing Massullo v. Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., 1999 WL 313830, at *5 (E.D.Pa. May 17, 1999)).

Defendants contend that *res judicata* bars this suit because the state court already adjudicated Oxford's claims. Oxford responds that, because it sought relief before the Court of Common Pleas pursuant to its right to a *statutory appeal* of the Zoning Board's decision, *res judicata* is inapplicable and its claims must be considered. Oxford relies on the Western District of Pennsylvania's decision in Brown v. Tucci, 960 F. Supp. 2d 544 (W.D. Pa. 2013) to support this proposition.[5] In Brown, the court considered whether plaintiff's statutory appeal of a local agency's decision to the Court of Common Pleas constituted a "civil action" for claim preclusion purposes. Answering in the negative, the court determined that:

> Under Pennsylvania law, a statutory appeal does not constitute a civil action governed by the Pennsylvania Rules of Civil Procedure. It is treated as a "part of

---

[5]   Oxford also attempts to apply Brown's holding to bar Defendants' collateral estoppel argument. This defense is unavailing, however, because the Brown court recognized the possibility that the plaintiff there may have been collaterally estopped from presenting issues unsuccessfully litigated in the state agency and appeals process. Brown, 960 F. Supp. 2d at 573 ("If Brown had unsuccessfully litigated the constitutionality of his discharge in his appeal to the Court of Common Pleas, he would have most likely been precluded from proceeding with his § 1983 claims against the Defendants in both their official and personal capacities.")

the administrative agency process" rather than as a "lawsuit."  A reviewing court
is constrained by statutory standards of review.  2 PA. CONS. STAT. §§ 753-754.

Brown, 960 F. Supp. 2d at 571 (citations omitted) (internal quotation marks omitted).

The Brown court thereafter declined to apply *res judicata* to plaintiff's claims in his

federal suit.

This Court agrees with Oxford that the state court in the instant case considered this

matter pursuant to Oxford's statutory appeal of the Zoning Board's decision. Therefore, under

Brown, the statutory appeal was not a "civil action," and Oxford's claims would not be

precluded.  The Court also notes, however, that a number of Pennsylvania courts have, in

contrast to Brown's holding, applied *res judicata* principles where claims were initially brought

in a statutory appeal.  See, e.g., Black v. City of Pittsburgh, CIV.A. 12-1286, 2013 WL 4041966

(W.D. Pa. Aug. 7, 2013) ("The Court agrees that, because federal courts are required to give

preclusive effect to the adverse decision of the Court of Common Pleas of Allegheny County

affirming the decision of the Civil Service Commission, Plaintiff's claims are wholly

insubstantial and frivolous."); Koynok v. Lloyd, 06CV1200, 2010 WL 883714 (W.D. Pa. Mar. 5,

2010) aff'd, 405 F. App'x 679 (3d Cir. 2011) (determining that findings of state court pursuant to

statutory appeals should be given preclusive effect); DeGenes v. Allegheny Cnty. Dist. Atty.,

654 C.D. 2013, 2013 WL 5777884 (Pa. Commw. Ct. Oct. 25, 2013) ("Next, as to Degenes'

claims that Streily misled him as to the appeal process under the RTKL and that he is entitled to

the requested records, we agree with Judge O'Reilly that these matters have already been

addressed by Judge O'Brien in Degenes' statutory appeal and that Degenes' claims are barred

under the doctrine of *res judicata*."); Takacs v. Indian Lake Borough, 10 A.3d 416 (Pa. Commw.

Ct. 2010) (considering application of *res judicata* to claims brought in statutory appeal).

Therefore, this Court concludes that whether *res judicata* applies to preclude claims brought in a

statutory appeal is still an unsettled issue under Pennsylvania law.  Because this Court holds that Oxford's action is barred by collateral estoppel **and** on the merits, as discussed *infra*, it declines to resolve this issue at this time, and will proceed in its analysis.

### 2.   Collateral Estoppel

Grounded in the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise," collateral estoppel prevents parties from relitigating issues of fact and questions of law previously ruled upon in a prior action.  In re MDC Sys., Inc., 488 B.R. 74, 91 (Bankr. E.D. Pa. 2013) (quoting Dici v. Commw. of Pa., 91 F.3d 542, 547 (3d Cir.1996)); see also Callowhill Ctr. Associates, 2 A.3d 802, 809 (Pa. Commw. Ct. 2010) (citing City of Pittsburgh v. Zoning Board of Adjustment, 559 A.2d 896 (Pa. 1989)).  In Pennsylvania, collateral estoppel applies where: (1) An issue decided in a prior action is identical to one presented in a later action;  (2) The prior action resulted in a final judgment on the merits;  (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.  Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

Though related to *res judicata*, collateral estoppel is a broader concept than true *res judicata* and operates any time there is a "prior adjudication[6] of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect."  Greenleaf v. Garlock, Inc.,

---

[6]   "An adjudication' is defined by the Administrative Agency Law as: '[A]ny final order, decree, decision, **determination** or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceedings in which the adjudication is made.'" Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund, 82 A.3d 485, 507 (Pa. Commw. Ct. 2013) (emphasis in original), reconsideration and reargument denied (Jan. 23, 2014).

174 F.3d 352, 358 (3d Cir. 1999) (citing Restatement (Second) of Judgments § 13 (1982)); see also Vignola v. Vignola, 39 A.3d 390, 393 (Pa. Super. Ct. 2012) appeal denied, 616 Pa. 660, 50 A.3d 126 (2012).  "Application of the principle of collateral estoppel is not precluded merely because administrative proceedings are involved"; rather, where an agency acts in a "judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," courts should not "hesitate to apply collateral estoppel principles".  Christopher v. Council of Plymouth Twp., 635 A.2d 749, 752 n.2 (Pa. Commw. Ct. 1993).[7]

In the instant matter, the previous state court litigation resulted in a final judgment on the merits,[8] Oxford was a party to that litigation, and Oxford had a full and fair opportunity to litigate those claims in state court.  Thus, to the extent that Oxford presents essential issues of fact or questions of law that it raised unsuccessfully in the state court litigation, it is precluded from seeking a more favorable ruling on those issues before this Court.

Oxford's briefing to the state court is highly relevant to determining what issues Oxford placed at issue in the state court litigation.  In defining the issues for the state court, Oxford identified two main "questions presented" to that court.   The first question Oxford identifies as being contested in the state court litigation is:

> Should this Court find that L&I and the Zoning Board erred in failing to classify the existing use as a transitional housing facility rather than a prison where the residents are not confined to the premises and L&I previously labeled the exact same use as a transitional housing facility, and had issued a Certificate of Occupancy for the use in the past?

---

[7]   Zoning hearing boards act as quasi-judicial bodies under Pennsylvania law.  Kennedy v. Upper Milford Twp. Zoning Hearing Bd., 834 A.2d 1104, 1114 (Pa. 2003).

[8]   This Court agrees with Defendants that Judge Panepinto's state court decision constitutes a final judgment.  See Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996) ("A judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal.")  In addition, Oxford states that it plans to withdraw its appeal of the state court's decision.  (Pl. Mot. Summ. J. at 11 n. 3.)

(Defs.' Mem. of Law in Opp'n at Ex. B at 11.)  Oxford also identifies a second issue contested

below as being:

> Should this Court rule that L&I and the Zoning Board erred in failing to grant a reasonable accommodation under the FHA to Appellants where they presented uncontradicted evidence that the Property was constructed for 88 residents and the transitional housing use, which was permitted in the applicable zoning district, was unfairly classified otherwise as a prison, and where the City presented no evidence whatsoever that the granting of the accommodation would present an undue burden on its zoning scheme?

(Defs.' Mem. of Law in Opp'n at Ex. B at 11.)  Furthermore, Oxford presented the following

"Concise Statement of Matters Complained of on Appeal" to the state court:

1. The trial court erred in affirming the [ZBA] . . . where the Zoning Board and the Department of Licenses and Inspections ("L&I") violated the Federal Fair Housing Act ("FHA") . . . the Americans With Disabilities Act ("ADA"), . . . and the Rehabilitation Act . . . in the following ways: (1) by failing to find that Minsec's use at the property located at 1917-23 Oxford Street in the City of Philadelphia (the "Property") was permitted by the Zoning Code; 2) by failing to find that the increase in population for the use at the Property deserved a reasonable accommodation under the FHA; and 3) by failing to find that the provisions of the Philadelphia Zoning Code were applied in a discriminatory manner against individuals at the Property on the basis of their,[sic] disability.

2. The trial court erred in failing to find that Minsec was entitled to an as of right permit from the City of Philadelphia because the use at the property was permitted under the Zoning Code, and/or was a continuation of a pre-existing non-conforming use.

3. The trial court erred in failing to find that the use of the Property was a valid pre-existing non-conforming use, legally allowed to operate at the Property.

4. The trial court erred in failing to find that L&I erred in defining the use at the Property as a private prison.

5. The trial court erred in failing to find that L&I erred in including blatantly inaccurate information in the Zoning Refusal.

6. The trial court erred in failing to find that the official Findings of Fact and Conclusions of Law of the Zoning Board contained multiple errors of law and discriminated against individuals with disabilities under the FHA.

7. The trial court erred in failing to find that the official Findings of Fact and Conclusions of Law of the Zoning Board were not supported by substantial evidence.

8. The trial court erred in failing to find that Minsec was entitled to a reasonable accommodation under the FHA where the City failed to contest the requested accommodation before the Zoning Board and thus waived any right to contest the accommodation.

9. The trial court erred in failing to find that the Zoning Board erred by considering community opposition when considering a reasonable accommodation under the FHA.

10. The trial court erred in failing to find that L&I and the Zoning Board erred in defining the use at the Property as a private prison.

Oxford Investments, L.P. v. Philadelphia Zoning Board of Adjustment, 2011 Phila Ct. Com. Pl.

LEXIS 58 (Pa. C.P. 2011) (citations omitted).

In ruling on these contested issues presented by Oxford, the state court issued a detailed opinion that addressed many of the same issues Oxford is currently attempting to litigate before this court. For example, Oxford raised, and the state court ruled in favor of the Defendants on, the disputed factual issue of whether or not the Property was entitled to a use permit as a "Rooming and Boarding House" under Zoning Code § 14-303(2)(a), or was a private penal institution under Zoning Code § 14-102(90). The state court held that the evidence produced by Oxford was insufficient to warrant a use permit as a "Rooming and Boarding House" as of right. Oxford Investments, L.P. v. Philadelphia Zoning Board of Adjustment, 2011 Phila Ct. Com. Pl. LEXIS 58, at *7-8. Oxford also raised, and the state court ruled in favor of the Defendants on, the issue of whether or not the evidence before the ZBA sufficiently alleged that Oxford's potential residents were handicapped individuals under the FHA. Id. at *10. Finally, Oxford raised, and the state court ruled in Defendants' favor on, the issue of whether Oxford's accommodation was actually necessary to provide disabled residents with an equal opportunity

to use and enjoy the property.  Each of these rulings constitutes an adverse ruling by the state court on essential elements of Oxford's FHA claims.  Therefore, the state court's ruling against Oxford on each of these issues represents a fatal blow to each of Oxford's FHA claims.

Because the state court already ruled against Oxford on these vital issues, Oxford is precluded from presenting them again to this Court in the hopes of receiving a different result. As the precluded issues are necessary elements in each of Oxford's FHA claims, the ultimate effect of the preclusion requires dismissal of all of Oxford's claims.

### 3.  Failure to Appear at the ZBA

Finally, the Court briefly addresses Oxford's repeated assertion that Defendants' failure to attend the ZBA hearing has waived any opposition to the positions advanced by Oxford at that hearing.  The Court need spend little time on this argument as Oxford has quoted contrary authority to the Court in its summary judgment brief.  (Oxford Mot. Summ. J. at 18.)  In its briefing to the Court, Oxford points the Court to a quotation from <u>Leoni v. Whitpain Township Zoning Hearing Board</u>,709 A.2d 999 (Pa. Commw.) <u>appeal</u> <u>denied</u> 732 A.2d 1211 (Pa. 1998), in which the Commonwealth Court of Pennsylvania held "that any appellant, **<u>other than a municipality</u>**, must first appear before the zoning board and raise an objection in order to pursue a meaningful appeal."  (emphasis added).  Under Pennsylvania law, municipalities, such as Defendants, are not required to attend zoning hearings as a prerequisite to an appeal.  53 Pa. Stat. Ann. § 13131.1 (West) ("In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city."); <u>accord</u> <u>Lower Paxton Twp. v. Fieseler Neon Signs</u>, 391 A.2d 720, 723 (Pa. Commw. Ct. 1978) ("[Appellee] contends that the Township waived its right to appeal

by not participating in the proceedings before the zoning board. We strongly disagree. To impose the burden of requiring a municipality to participate in every hearing for a variance lest it waive its right to challenge the zoning board's action would be unreasonable.").

As Oxford's own authority holds that municipalities are not required to attend zoning hearings, Defendants' failure to attend Oxford's ZBA hearing does not waive any of Defendants' arguments before this Court.

B.    Alleged Violations of the FHA

Even if the Court were to consider the issues precluded by the previous litigation, Oxford's substantive claims are all without merit.  Oxford advances four distinct claims under the FHA: disparate treatment: discriminatory classification- labeling the use at the property a penal institution, disparate treatment: discriminatory classification- failure to define the use at the property as a permitted use (transitional housing facility or rooming house), disparate impact- treating transitional housing facilities as penal institutions discriminates against disabled individuals, and a failure to grant a reasonable accommodation.  (Compl. at ¶¶ 36 – 80.)  Because Oxford has failed to support each of these claims, and failed to demonstrate that its residents were actually handicapped, Summary Judgment in Defendants' favor is warranted.

**1. Discrimination "Because of a Handicap"**

Underlying all of Oxford's claims is the requirement under the FHA that Defendants discriminated against the Residents "because of a handicap." 42 U.S.C. § 3604(f). Oxford has failed to demonstrate any of its potential residents meet the statutory definition of handicapped. As such, summary judgment in favor of Defendants is appropriate.

The FHA defines a handicap as "(1) a physical or mental impairment which substantially limits one or more of [a] person's major life activities, (2) a record of having such an impairment,

14

or (3) being regarded as having such an impairment." <u>Cmty. Servs., Inc. v. Wind Gap Mun.</u>

<u>Auth.</u>, 421 F.3d 170, 179 (3d Cir. 2005) (quoting 42 U.S.C. § 3602(h)).  Drug addiction and

alcoholism are both recognized as potential handicaps where the addiction substantially limits a

major life activity.  24 C.F.R. § 100.201; <u>see also</u> <u>McKivitz v. Twp. of Stowe</u>, 769 F. Supp. 2d

803, 823 (W.D. Pa. 2010) ("recovering alcoholics and drug addicts can sometimes qualify as

handicapped individuals under the FHA, provided that they are not currently using illegal

drugs.") (internal quotations omitted) (quoting <u>Lakeside Resort Enterprises, LP v. Bd. Of Sup'rs</u>

<u>of Palmyra Twp.</u>, 455 F.3d 154, 156 n. 5 (3d Cir. 2006)).

 Oxford has presented voluminous record evidence that establishes that a large majority of

potential residents of the Property suffer from physical or mental impairments in the form of

addiction to drugs and alcohol and/or the residents are mentally ill.  (Stmt. Stip. Facts at ¶ 5.)

Oxford offers no record evidence, however, to support a finding that these impairments

"substantially limit" a "major life activity," as is required to find the existence of a handicap.

<u>See</u>, <u>e.g.</u>, <u>Cohen v. Twp. of Cheltenham, Pennsylvania</u>, 174 F. Supp. 2d 307, 329 (E.D. Pa. 2001)

("Plaintiffs in this case produced no evidence showing how any of the impairments alleged in

their submissions might substantially limit major life activities. Their arguments are limited to

mere conclusory statements that an impairment meets the definition of handicap."); <u>Oxford</u>

<u>House, Inc. v. Twp. of Cherry Hill</u>, 799 F. Supp. 450, 460 (D.N.J. 1992) ("[T]he second step of

the analysis [, whether the impairment substantially limits a major life activity,] cannot be

reached as a matter of law but must rest instead on some specific factual showing that a

plaintiff's alcoholism or drug addiction 'substantially limits [a] major life activity.'").  With no

direct or circumstantial evidence to demonstrate a substantial limitation of the potential residents'

major life activities, Oxford's claim requires the Court to assume that all recovering addicts are

handicapped.  Such an analysis clearly conflicts with the Supreme Court's directive to conduct individualized disability assessments and is fatal to all of Oxford's FHA claims.  Cf. Cohen, 174 F. Supp. 2d at 328 ("With this record, plaintiffs are essentially asking the Court to find that because abused, abandoned, and/or neglected children *might generally* be handicapped, the children at issue in this case would *in fact* be handicapped.").[9]

### 2. Disparate Treatment

"To prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action.  Wind Gap Mun. Auth., 421 F.3d at 177.  The discriminatory purpose need not be motivated by hostility or animus towards a particular handicap, "[t]he plaintiff is only required to show that a protected characteristic played a role in the defendant's decision to treat her differently.'"  Id. (quoting Cmty. Hous. Trust v. Dep't of Consumer & Regulatory Affairs, 257 F. Supp. 2d 208, 225 (D.D.C. 2003)).

### a) Classification as a Private Penal Institution

Oxford's initial disparate treatment claim revolves around the decision of the ZBA to classify the Property as a private penal institution.  Specifically, Oxford alleges that Defendants applied the provisions of the zoning code so as to disadvantage the potential residents because of their status as addicts.  Because Oxford offers nothing in the way of direct or circumstantial evidence of such discriminatory treatment by Defendants, the Court will dismiss these claims.

Philadelphia Zoning Code § 14-102(90) (2011) defines a private penal institution as:

> An institution operated by a private party under contract with the City of Philadelphia, the Commonwealth of Pennsylvania or the federal government for

---

[9]   The State Court reached the same determination.  Oxford Investments, L.P. v. Philadelphia Zoning Board of Adjustment, 2011 Phila Ct. Com. Pl. LEXIS 58, at *8-9.

the confinement of offenders sentenced by a court and still under the jurisdiction of a court.

Oxford suggests that the Defendants unreasonably labeled their facility as a private penal institution despite the fact that Oxford presented evidence that the residents were not "confined" to the Property.[10]

Despite the record evidence presented by Oxford at the zoning hearing, the ZBA was under no duty to accept Oxford's evidence as true, even if uncontroverted. Constantino v. Zoning Hearing Bd. of Borough of Forest Hills, 618 A.2d 1193, 1196 (Pa. Commw. Ct. 1992) ("The Board as factfinder is the sole judge of credibility and conflict in testimony and has the power to reject even uncontradicted testimony if the Board finds the testimony lacking in credibility."); see also Choe v. Philadelphia Bd. of License & Inspection, 847 A.2d 214, 216 n.5 (Pa. Commw. Ct. 2004). Additionally, "It is well established that a zoning board's interpretation of its zoning ordinance is to be given great weight as representing the construction of a statute by the agency charged with its execution and application." In re Brickstone Realty Corp., 789 A.2d 333, 339 (Pa. Commw. Ct. 2001).

Here, there was ample record evidence to support the ZBA's decision to disbelieve the testimony of Oxford representatives, and classify the Property as a private penal institution. As the ZBA noted in its findings of fact (Oxford's Mot. Summ. J. at Ex. I), Oxford witnesses routinely offered testimony that conflicted with the testimony of other witnesses and the documents submitted to the ZBA. The ZBA was under no duty to simply ignore the evidence and repeated testimony of Oxford witnesses classifying the Property as a community correctional center. Thus, Oxford has failed to demonstrate that the Defendants' decision to label the

---

[10] The parties do not debate that the Property satisfied all *other* statutory elements of a private penal institution under § 14-102(90).

Property a "private penal institution" was motivated by discriminatory animus towards recovering addicts.

For many of the same reasons, Defendants' refusal to label the property as a "transitional housing facility" or "rooming house", permitted in the C-2 zone where the Property is located, does not evince a discriminatory animus. Simply put, a private penal institution is not comparable to a private rehabilitation facility. "The expected impact of a home-based business is not comparable to that of a community corrections center for up to 20 state parolees or persons under the jurisdiction of the Department of Corrections (DOC), Bureau of Community Corrections." Geneva House, Inc. v. Minsec of Scranton, Inc., 25 A.3d 427, 436 (Pa. Commw. Ct. 2011). The ZBA's refusal to ignore a grossly different use of the property, namely housing persons referred through the court system, does not evince a discriminatory animus or paternalistic view of addicts, even in the light most favorable to Oxford. To the contrary, the record evidence demonstrates that the City acted in accordance with its facially neutral zoning code.

Because Oxford has failed to show that Defendants acted with a discriminatory purpose, its disparate treatment claims must fail.

b) Community Statements at the ZBA Hearing

Oxford also asserts that statements made by community members at the Zoning Board tainted the ZBA's decision. (Oxford Mot. Summ. J. at 20-21.) In this regard, Oxford relies primarily on a District of Columbia District Court case, Community House Trust v. Department of Consumer & Regulatory Affairs. 257 F. Supp. 2d 208 (D.D.C. 2003). In Community House Trust the court was confronted with neighborhood opposition expressing "their fears and anxieties about living in close proximity to Zeke's House's *mentally ill residents*." Id. at 213

(emphasis added).  The neighborhood opposition eventually included multiple newspaper

editorials, petitions, e-mails to zoning board members, and eventually the Mayor of the District

of Columbia became involved in the dispute.  Id. at 213-214.  Ultimately, the court in

Community House Trust found the decision of the zoning board to be influenced by "strong,

discriminatory opposition" on the part of the community.  Id. at 226-227.  Unlike the situation in

Community House Trust, there is simply no record evidence, even in the light most favorable to

Oxford, that permits the court to find that the neighborhood opposition to Oxford was the result

of "strong, *discriminatory* animus" against recovering alcoholics and drug addicts.  To the

contrary, as the ZBA noted in its findings of fact, the community opposition to this project had

everything to do with the Property's status as a correctional facility and nothing to do with the

fact that the residents were recovering addicts.  (Oxford Mot. Summ. J. at Ex. I at ¶ 58.)  Here,

unlike in Community House Trust, there is no inference of discrimination because community

opposition to Oxford's request to the ZBA was not motivated by a discriminatory animus

towards addicts.  Cf. Community House Trust, 257 F. Supp. 2d at 227; see also Cmty. Servs., Inc.

v. Heidelberg Twp., 439 F. Supp. 2d 380, 396 (M.D. Pa. 2006) ("Transcripts from the hearing

before the Zoning Board reflect significant community concern over the specific nature of the

prospective residents' disabilities.  The Board did not seek to allay the pervasive—and

perverse—misconceptions, but fostered the acrimony, and requested that private counsel assist.").

Accordingly, without any evidence of a discriminatory animus towards addicts on the

part of the neighborhood opposition, Oxford's discrimination claim against Defendants fails, and

summary judgment in favor of Defendants is appropriate.

### 3.  Disparate Impact

To state a claim for disparate impact, "a plaintiff must prove that defendants' policies have a greater adverse impact on persons with disabilities than on non-protected persons." Sharpvisions, Inc. v. Borough of Plum, 475 F. Supp. 2d 514, 525 (W.D. Pa. 2007).  In such a claim, an outwardly neutral practice or law has a "significantly adverse or disproportionate impact on persons with disabilities." Id.  "Typically, a disparate impact is demonstrated by statistics, and a *prima facie* case may be established where gross statistical disparities can be shown." Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly, 658 F.3d 375, 382 (3d Cir. 2011) (internal citations and quotations omitted).

Here, Oxford offers nothing more than unsupported assertions to support its disparate impact claims.  Oxford's Opposition Brief contains no statistics demonstrating statistical disparities in variances granted by Defendants.  The Opposition Brief contains no analysis of any ZBA decision other than the one that is the subject of this lawsuit.  Indeed, Oxford supports its disparate impact claim only with statements such as, "The City's classification of the use at the property as a "private penal institution" therefore discriminated against the disabled residents at the Property and effected a disparate impact upon them in violation of the FHA."  (Oxford's Opp'n Brief at 15.)  This is simply insufficient to state a *prima facie* claim for disparate impact discrimination.  As such, Summary Judgment will be granted in favor of Defendants, and the claim will be dismissed.

### 4.  Reasonable Accommodations Claim

The FHA makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap…" 42 U.S.C. § 3604(f)(2). Cities, and

their zoning boards, are not exempt from the requirement to permit reasonable accommodations in their "rules, policies, and practices when reviewing proposals for housing for the handicapped." Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, 284 F.3d 442, 449 (3d Cir. 2002) (quoting 42 U.S.C. § 3604(f)(3)(B)); see also McKivitz v. Twp. of Stowe, 769 F. Supp. 2d 803, 823-24 (W.D. Pa. 2010) ("The FHA, the Rehabilitation Act and the ADA are all applicable to zoning decisions.").

Discrimination is explicitly defined to include "refusal[s] to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  Thus, to succeed on a reasonable accommodations claim, a plaintiff must show that the requested accommodation was "(1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing."  Lapid-Laurel, 284 F.3d at 457 (quoting Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 603 (4th Cir.1997)).

The Third Circuit utilizes a burden shifting analysis to determine if a plaintiff has stated a prima facie reasonable accommodation claim.  Lapid-Laurel, 284 F.3d at 457; see also NHS Human Servs. v. Lower Gwynedd Twp., CIV.A. 11-2074, 2012 WL 170740, at *6 (E.D. Pa. Jan. 20, 2012).  A "plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling…" Lapid-Laurel, 284 F.3d at 457.  To satisfy this initial burden, a plaintiff must demonstrate "a nexus between the reasonable accommodations that he or she is requesting and their necessity for providing handicapped individuals with an equal opportunity to use and enjoy housing." McKivitz, 769 F. Supp. 2d at 825 (quoting Lapid–Laurel, 284 F.3d at 459) (internal punctuation

omitted).  Only after a plaintiff makes this showing does the burden shift, and a defendant is required to demonstrate that the requested accommodation is unreasonable.  Id. at 459.

Viewing the evidence in the light most favorable to Oxford, the Court concludes that Oxford has failed to carry its initial burden by demonstrating the requested accommodation was necessary to afford handicapped persons an equal opportunity to use and enjoy the Property.  To demonstrate a necessary accommodation, "the FHA requires [Plaintiff] to show that the size of its proposed Facility is required to make it financially viable or medically effective."  Lapid-Laurel, L.L.C., 284 F.3d at 461.  Oxford has entirely failed to submit record evidence to demonstrate that increasing the resident population of the Property would create better outcomes for the residents or make the Property fiscally viable.  Though Oxford does highlight that the previous operator declared bankruptcy, there is absolutely no indication that Oxford was unable to manage the Property efficiently.  Without evidence that the expansion would be necessary to the continued financial viability of the Property, Oxford has failed to demonstrate that the requested accommodation was necessary.  Lapid-Laurel, L.L.C., 284 F.3d at 461.

Because Oxford has failed to point to evidence demonstrating that the requested accommodation was necessary, the burden never shifts to Defendants to demonstrate the unreasonability of the accommodation.  Accordingly, summary judgment is appropriate in favor of Defendants and the reasonable accommodation claim dismissed.


IV.   CONCLUSION

For the foregoing reasons, this Court denies Oxford's motion in its entirety, grants Defendants' motion in its entirety, and dismisses all of Oxford's claims.  An appropriate Order will follow.